UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT L. WEGMAN,

                              Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                    03-CV-234S
JOHN GRIMMKE, et al.,

                              Defendants.

## I.  INTRODUCTION

Plaintiff, proceeding *pro se*, commenced this action pursuant to 42 U.S.C. §§ 1983 and 1985 alleging that Defendants violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights.  Defendants have filed separate Motions for Summary Judgment. (Docket Nos. 192, 193, 201).  For the following reasons, Defendants' motions are granted in part and denied in part.  Plaintiff has filed a Motion to Preclude Summary Judgment (Docket No. 206) and a Motion for a Determination under Federal Rule of Civil Procedure 54(b) (Docket No. 232).  For the following reasons, Plaintiff's motions are denied.

## II.  BACKGROUND

### A.     Procedural History

Plaintiff filed his initial Complaint on March 26, 2003.  (Docket No. 1).  On May 28, 2004, This Court permitted Plaintiff to file an Amended Complaint.  (Amended Complaint at Docket No. 95).  On September 30, 2004, this Court issued a Decision and Order granting summary judgment to Defendants Fowler and Hopkins, and denying summary judgment as to Defendant Canfield.  (Docket No. 139).  On March 10, 2005, this Court

issued a Decision and Order granting dismissal to Defendants Reynolds, Guinane, Bradford County, Brown, DeLauro, Robert Packer Hospital, Homan, Gillott, Bradley, and Noone.  (Docket No. 163).

Defendant Ira Davenport Memorial Hospital filed a Motion for Summary Judgment on February 27, 2006.[1]  (Docket No. 192).  Defendants Curt Eaton, Cheng Yin, John A. Gibson, and John Grimmke filed a Motion for Summary Judgment on February 28, 2006.[2] (Docket No. 193).  Defendants Steuben County, the Steuben County Jail, Jeanna Berry, Gerald McComber, Karen Mead, Kirk Sager, Chris Lian, and Keith Barrett filed a Motion for Summary Judgment on March 7, 2006.[3]  (Docket No. 201).

Plaintiff filed a Motion to Preclude Summary Judgment on April 5, 2006.[4]  (Docket No. 206).  Plaintiff filed a Motion for a Determination under Rule 54(b) on October 3, 2006.[5] (Docket No. 232).

---

[1]     In support of its Motion for Summary Judgment, the Ira Davenport Memorial Hospital filed the following documents: a Rule 56 Statement of Undisputed Facts; the Affidavit of Marylou K. Roshia with supporting exhibits; the Affidavit of Linda S. Beeman with supporting exhibits; and a Memorandum of Law. In opposition to Defendant's motion, Plaintiff filed a Rule 56 Statement of Undisputed Facts, and a Memorandum of Law.  In reply, Defendant filed a memorandum of law.

[2]     In support of their Motion for Summary Judgment, Defendants filed the following documents: a Declaration by G. Materne; a Declaration by Cheng Yin; a Memorandum of Law; a Declaration by Michael J. Russo; and a Rule 56 Statement of Undisputed Facts.  In opposition, Plaintiff filed an Affirmation and a Memorandum of Law.  In reply Defendants filed the Declarations of John Grimmke, John Gibson, and Curt Eaton, and a Memorandum of Law.

[3]     In support of their Motion for Summary Judgment, Defendants filed a Rule 56 Statement of Undisputed Facts, an affidavit of Lian and Rogeux with exhibits, and a Memorandum of Law.  In opposition, Plaintiff filed a a Rule 56 Statement of Undisputed Facts with supporting exhibits, and a memorandum of law.

[4]     In support of his Motion to Preclude Summary Judgment, Plaintiff filed supporting exhibits and a Memorandum of Law.  The Steuben County Defendants filed a responding memorandum.

[5]     In support of his Motion for Summary Judgment, Plaintiff filed an Affirmation and a Memorandum of Law.  The various Defendants separately filed responding memoranda.

## B.   Facts

Plaintiff was arrested on May 13, 2000, following an incident where he held three individuals at gunpoint for an extended period of time.  See People v. Wegman, 2 A.D.3d 1333 (4th Dept. 2003).   The three individuals overcame Plaintiff by beating him with fireplace tools and a shillelagh.  (Amended Complaint, Docket No. 95, ¶¶ 30-32).  Following his arrest, Plaintiff was transported by helicopter to the Robert Packer Hospital in Sayre, Pennsylvania.  (Amended Complaint, Docket No. 95, ¶ 33).  Plaintiff was diagnosed with facial bone fractures, and was released two days later to the custody of the New York State Police.   (Complaint, Exhibits A-12, A-13).   Plaintiff alleges that various Defendants conspired to arrange his early discharge from the hospital despite his serious medical needs.  (Amended Complaint, Docket No. 95, ¶ 39).  Plaintiff alleges that Dr. Howard Dash, a reconstructive surgeon at the Robert Packer Hospital, intended to perform facial reconstructive surgery on Plaintiff had he not been prematurely discharged from the hospital.  (Amended Complaint, Docket No. 95, ¶ 39).

After he was discharged from the Hospital, Plaintiff was briefly housed at the Bradford County Jail in Pennsylvania, and eventually moved to the Steuben County Jail in New York.  (Amended Complaint, Docket No. 95, ¶¶ 44-55).

While at the Steuben County Jail, Plaintiff was taken to the Ira Davenport Hospital on June 2, 2000, where he was examined by Dr. Mohammad Mirza.  (Complaint, Exhibit C-1).  Dr. Mirza confirmed that Plaintiff had suffered facial fractures, and indicated that Plaintiff should follow up with a maxillary surgeon for his face.  (Complaint, Exhibits C-1, C-3).  Shortly thereafter, on June 5, 2000, Plaintiff again saw Dr. Dash at the Robert Packer Hospital.  (Complaint, Exhibit C-4).  Dr. Dash recommended a surgical procedure

3

to repair Plaintiff's facial fractures.  (Complaint, Exhibit C-4).

Plaintiff alleges that the Steuben County Defendants (Steuben County, the Steuben County Jail, Jeanna Berry, Gerald McComber, Karen Mead, Kirk Sager, Chris Lian, and Keith Barrett) exhibited a deliberate indifference to his medical needs and subjected him to extreme pain by refusing to provide the necessary pain medications and facial reconstructive surgery.  (Amended Complaint, Docket No. 95, ¶ 64).[6]

On September 26, 2000—in an incident unrelated to his facial injuries—Plaintiff fell and injured his ankle while exiting a jail transport van at the Ira Davenport Memorial Hospital.  (Plaintiff's Statement of Undisputed Facts, Docket No. 192-2, ¶ 4).  Multiple X-rays of Plaintiff's ankle did not indicate a fracture.  (Amended Complaint, Docket No. 95, ¶ 67; Beeman Affidavit, Docket No. 192-10, Exhibit E).  On December 23, 2000, x-rays of Plaintiff's ankle revealed a healing fracture of the distal fibula.  (Plaintiff's Statement of Undisputed Facts, Docket No. 210, ¶ 8).  Plaintiff has filed an Eighth Amendment claim against the Ira Davenport Memorial Hospital and the Steuben County Defendants alleging that Defendants were deliberately indifferent to Plaintiff's medical needs in treating his ankle injury.  (Amended Complaint, Docket No. 95, ¶ 74).

Plaintiff lastly alleges that Dr. John Gibson failed to treat Plaintiff's dental problems, which caused him to suffer severe pain.  (Plaintiff's Mem., Docket No. 212, pp. 14-16).  Dr.

---

[6]     Although Plaintiff does not expressly state that he is pursuing an Eighth Amendment claim against the Steuben County Defendants in Count Four of the Complaint, he alleges that the Steuben County Defendants acted "with deliberate indifference in . . . denying treatment or otherwise disregarding Plaintiff's need of pain medication [and] surgery."  (Amended Complaint, Docket No. 95, ¶ 64).  Federal courts routinely interpret pro se litigant's claims to raise the strongest arguments that they suggest.  See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Because the language of Plaintiff's complaint strongly suggests an Eighth Amendment claim against the Steuben County Defendants, this Court will treat it as such.

Gibson became aware of Plaintiff's dental problems at an initial examination on August 26, 2002.  (Plaintiff's Affirmation, Docket No. 209, p. 6; Defendant's Mem., Docket No. 196, p. 16).  Dr. Gibson did not see or treat Plaintiff until a second appointment nearly a year later on August 4, 2003.  (Plaintiff's Statement of Facts, Docket No. 209, p. 6).  Plaintiff alleges that this delay shows a deliberate indifference to his medical needs.  (Plaintiff's Mem., Docket No. 212, pp. 14-16).

## III.  DISCUSSION

Cognizant of the distinct disadvantage that pro se litigants face, federal courts routinely read their submissions liberally, and interpret them to raise the strongest arguments that they suggest.  See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Since Plaintiff is proceeding pro se, this Court has considered his submissions and arguments accordingly.

## A.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).  A fact is "material" if it "might affect the outcome of the suit under governing

law." <u>Anderson</u>, 477 U.S. at 248.  In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

At this stage, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249.  Thus, summary judgment is not appropriate if "there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." <u>Ford</u>, 316 F.3d at 354.

When deciding a motion for summary judgment, a court must view the evidence and the inferences drawn from the evidence "in the light most favorable to the party opposing the motion." <u>Addickes v. S.H. Kress and Co.</u>, 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970).   However, the party against whom summary judgment is sought "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2d Cir. 2002). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991).

## B.    Denial of Medical Treatment Claims

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  <u>See</u> 42 U.S.C. § 1983.  On its own, § 1983 does not provide

a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)).   Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.  Here, Plaintiff's denial of medical treatment claim is grounded in the Eighth Amendment.

The Eighth Amendment to the United States Constitution applies to the States through the Fourteenth Amendment, and "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 297, 11 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991); U.S. Const. amend. VIII.  As such, prison conditions and the treatment prisoners receive while incarcerated are subject to scrutiny under the Eighth Amendment.  See DeShaney v. Winnebago County Dept. of Social Svcs., 489 U.S. 189, 199-200, 109 S.Ct. 998, 1005-1006, 103 L.Ed.2d 249 (1989).   In addition, the Supreme Court has recognized that a prisoner's claim that he was intentionally denied medical treatment is cognizable under the Eighth Amendment and § 1983:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.   Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.
> . . .
> In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate

> indifference to serious medical needs.  It is only such
> indifference that can offend evolving standards of decency in
> violation of the Eighth Amendment.

<u>Estelle v. Gamble</u>, 429 U.S. 97, 104, 106, 97 S.Ct. 285, 291, 292, 50 L.Ed.2d 25 (1976)

(quotations and citations omitted).

"A claim of cruel and unusual punishment in violation of the Eighth Amendment

has two components – one subjective, focusing on the defendant's motive for his conduct,

and the other objective, focusing on the conduct's effect." <u>Sims v. Artuz</u>, 230 F.3d 14, 20

(2d Cir. 2000) (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 7-8, 112 S.Ct. 995, 999, 117

L.Ed.2d 156 (1992); <u>Blyden v. Mancusi</u>, 186 F.3d 252, 262 (2d Cir. 1999)).  With respect

to a claim of deliberate indifference to a serious medical need, a prisoner must show that

he suffered from a "sufficiently serious" medical condition, <u>see</u> <u>Chance v. Armstrong</u>, 143

F.3d 698, 702 (2d Cir. 1998), and that the defendants acted with a "sufficiently culpable

state of mind," <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir. 1994).

The subjective component "requires a showing that the defendant "had the

necessary level of culpability, shown by actions characterized by 'wantonness' in light of

the particular circumstances surrounding the challenged conduct." <u>Sims</u>, 230 F.3d at 21

(citations omitted).   The objective component is "contextual and responsive to

contemporary standards of decency." <u>Id.</u> (quoting <u>Hudson</u>, 503 U.S. at 8).

> "An official acts with the requisite deliberate indifference when
> he 'knows of and disregards an excessive risk to inmate health
> or safety; the official must be both aware of facts from which
> the inference could be drawn that a substantial risk of serious
> harm exists, and he must also draw the inference.'"

<u>Brown v. Picarelli</u>, No. 96 Civ. 1222, 2003 WL 1906180, at *6 (S.D.N.Y. Apr. 15, 2003)

(quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S.Ct. 1970,  128 L.Ed.2d 811 (1994)).

**C.      Motion for Summary Judgment by the New York State Defendants**

**1.      Defendants John Grimmke and Curt Eaton**

Plaintiff alleges that on May 15, 2000, he was supposed to be transferred from Robert Packer Hospital in Pennsylvania to another hospital in New York for surgery, but that he was instead transferred to the Bradford County Jail. (Amended Complaint, Docket No. 95, ¶ 38). Plaintiff claims this was the result of interference by Defendants John Grimmke and Curt Eaton. (Amended Complaint, Docket No. 95, ¶¶ 38-40). Plaintiff alleges that Defendants Grimmke and Eaton conspired to order his transfer to the Bradford County Jail, despite his urgent medical needs. (Amended Complaint, Docket No. 95, ¶¶ 38-40).

Defendants Grimmke and Eaton have moved for summary judgment arguing in part that Plaintiff has failed to demonstrate that Defendants were personally involved in Plaintiff's discharge from the hospital. (Defendants' Mem., Docket No. 196, pp. 10-11). Defendants Eaton and Grimmke argue that there is no indication that they were involved in an alleged conspiracy to discharge Plaintiff from Robert Packer Hospital and deprive him of medical care. Plaintiff responds that based on conversations he overheard at the hospital, he believes there was a concerted effort to have him discharged despite his urgent medical needs. (Plaintiff's Mem., Docket No. 212, pp. 8-9).

The discharge papers completed by Dr. Anthony Gillott from Robert Packer Hospital do not support Plaintiff's claim that he was supposed to be transferred to another medical facility. The discharge report states: "The patient is found, at this time, to be stable with no pertinent life-threatening injuries, therefore, the patient is being released into the

custody of the legal authorities." (Robert Packer Hospital Discharge Summary, reproduced as Exhibit A-12 of the Complaint).  The discharge papers indicate that Plaintiff was to be sent to the "jail" with certain medications, that he was not to undergo any strenuous activities, and that he was to have followup appointments with Dr. Anthony Gillott and Dr. Howard Dash.  (Complaint, Exhibits A-12, A-13).  The discharge papers do not say anything about Plaintiff having medical needs that would require he be transferred directly to another hospital.  (Complaint, Exhibit A-12, 13).  While the discharge papers reference the State's desire to extradite Plaintiff into the New York State legal system, there is no indication that Plaintiff's discharge was at odds with his medical needs.  (Complaint Exhibit A-12).  In response, Plaintiff argues that his discharge was arranged by Defendants Grimmke and Eaton, and that Plaintiff believed he was being transferred to another hospital for continued medical treatment.

In resolving a motion for summary judgment, all doubts must be resolved in favor of the plaintiff, however, where there is no evidentiary support, a plaintiff's allegations alone will not defeat summary judgment.  See Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995); Munoz v. St. Mary-Corwin Hospital, 221 F.3d 1160, 1168 (10th Cir. 2000).  Here, Defendants have demonstrated the absence of any evidence to support Plaintiff's claim that he was wrongfully removed from the hospital, or that his discharge was the result of a conspiracy among Defendants.  Plaintiff has failed to produce any evidence, apart from speculation and conjecture, to demonstrate a genuine issue of material fact as to the involvement of Defendants Eaton and Grimmke in his discharge from Robert Packer Hospital.  This court will therefore grant Defendants' summary judgment motion as to Defendants Eaton and Grimmke.

2.      **Defendant Dr. Cheng Yin**

Plaintiff alleges that while he was at Elmira Correctional Facility, Dr. Yin ignored his requests for treatment of his facial fractures. (Amended Complaint, Docket No. 95, ¶ 76). Defendant Yin has moved for summary judgment arguing that Plaintiff's claim must be dismissed because Plaintiff failed to exhaust administrative remedies by filing a grievance. (Defendants' Mem., Docket No. 196, pp. 11-14). Plaintiff concedes this, and does not oppose the dismissal of his claim against Dr. Yin. (Plaintiff's Affirmation, Docket No. 209, pp. 1, 6-7). This Court will therefore grant Defendant Yin's motion for summary judgment, and dismiss Plaintiff's complaint against Dr. Yin.

To the extent that Plaintiff asserts state law claims against Defendants Grimmke, Eaton, and Yin, this Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367. The United States Supreme Court has instructed that courts should ordinarily decline to exercise supplemental jurisdiction in the absence of federal claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (noting that in the usual case where all federal claims are eliminated before trial, the relevant factors informing the decision of whether to exercise supplemental jurisdiction will "point towards declining to exercise jurisdiction over the remaining state-law claims"); see also Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well."); Powell v. Gardner, 891 F.2d 1039, 1047 (2d Cir. 1989) ("in light of proper dismissal of the § 1983 claim against the County, the district court should have declined to exercise pendent jurisdiction over Powell's state-law claims against the County"). Accordingly, this Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims

against Defendants Grimmke, Eaton, and Yin.

### 3.    Defendant Dr. John A. Gibson

In his claim against Dr. Gibson, Plaintiff alleges that Gibson failed to treat Plaintiff's dental problems, which caused Plaintiff to suffer severe pain.  (Plaintiff's Mem., Docket No. 212, pp. 14-16).  Plaintiff alleges that due to injuries suffered on May 13, 2000, he lost his upper dentures and permanent caps covering his lower teeth.  (Plaintiff's Affirmation, Docket No. 209, p. 5).  Plaintiff was not seen by a dentist until August 26, 2002, when he saw Dr. Gibson, who told Plaintiff that he would require further treatment including the extraction of remaining teeth.  (Plaintiff's Affirmation, Docket No. 209, p. 6; Defendant's Mem., Docket No. 196, p. 16).  On August 4, 2003, Dr. Gibson again saw Plaintiff, but did not treat him at that time.  (Plaintiff's Affirmation, Docket No. 209, p. 6).  Plaintiff eventually filed a grievance regarding his dental care that was decided in Plaintiff's favor.  (Plaintiff's Affirmation, Docket No. 209, p. 6).

Dr. Gibson states that following his initial meeting with Plaintiff in August of 2002, there was a breakdown in communication and that Plaintiff was not scheduled for further treatment until Dr. Gibson again saw Plaintiff on August 4, 2003.  (Gibson Declaration, Docket No. 229, ¶¶ 3-4).

Viewing these facts in the light most favorable to Plaintiff, this Court finds that a reasonable jury could find that Dr. Gibson acted with deliberate indifference.  There is support in the record to Plaintiff's contention that Dr. Gibson examined him, determined that treatment was necessary, and then failed to address his dental problems for nearly one year.  (Plaintiff's Affirmation, Docket No. 209, pp. 5-6; Defendant's Mem., Docket No. 196, p. 16; Gibson Declaration, Docket No. 229, ¶¶ 3-4).  A prison official acts with

deliberate indifference "if he knows that [an] inmate[] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 825, 114 S. Ct. 1970, 1973, 128 L. Ed. 2d 811 (1970). Because Dr. Gibson knew of and failed to address Plaintiff's serious dental problems, there is a question of fact as to whether he acted with deliberate indifference. Defendants' Motion for Summary Judgment is therefore denied as to Defendant Gibson.

### D.    Motion for Summary Judgment by the Ira Davenport Memorial Hospital

On September 26, 2000, Plaintiff fell and injured his ankle while exiting a jail transport van at the Ira Davenport Memorial Hospital. (Statement of Undisputed Facts, Docket No. 192-2, ¶ 4). Plaintiff concedes that no one from the hospital caused him to injure his ankle. (Plaintiff's Statement of Undisputed Facts, Docket No. 210, ¶ 5).

Plaintiff returned to the Steuben County Jail, was examined by a jail nurse, and returned to the hospital for examination of his injury. (Statement of Undisputed Facts, Docket No. 192-2, ¶¶ 6-9). Hospital records confirm that Plaintiff was treated for a laceration to the ankle and a possible twisted knee. (Beeman Affidavit, Docket No. 192-8, Exhibit C). X-rays taken at the hospital of Plaintiff's knee were negative for a fracture. (Beeman Affidavit, Docket No. 192-8, Exhibit C). Plaintiff alleges that hospital employees told him that x-rays of his ankle injury were negative. (Amended Complaint, Docket No. 95, ¶ 67).

On October 10, 2000, Plaintiff complained of ankle pain to the jail physician, Dr. M. H. Mirza, who sent Plaintiff for an x-ray at Ira Davenport Memorial Hospital. (Statement of Undisputed Facts, Docket No. 192-2, ¶¶ 18-19). The x-ray revealed no fracture. (Beeman Affidavit, Docket No. 192-10, Exhibit E).

On December 23, 2000, Plaintiff was admitted to Ira Davenport Memorial Hospital after developing drainage at the wound on his ankle.  (Statement of Undisputed Facts, Docket No. 192-2, ¶ 23).  Plaintiff asserts that his ankle pain continued and the wound had not healed.  (Plaintiff's Statement of Undisputed Facts, Docket No. 210, ¶ 8).  X-ray's taken at this time revealed a healing fracture of the distal fibula.  (Plaintiff's Statement of Undisputed Facts, Docket No. 210, ¶ 8).

Plaintiff sued Defendant Ira Davenport Memorial Hospital for the acts and omissions of its employees, which Plaintiff alleges violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights.  (Amended Complaint, Docket No. 95, ¶ 74).  Ira Davenport Memorial Hospital has moved for summary judgment, and contends that it is not a state actor within the meaning of § 1983, and therefore cannot be liable in a § 1983 civil rights  action.  The Defendant hospital submits that it is not a state hospital, nor does it have a contract with the Steuben County Jail to treat prisoners.  (Defendant's Memorandum of Law, Docket No. 192-16, pp. 8-9).

"[I]n any § 1983 action the initial inquiry must focus on . . . (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of the rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).  Therefore, to prevail on his § 1983 claim, Plaintiff must first establish that the defendant hospital was a state actor.  Bryant v. Maffucci, 923 F.2d 979, 982-83 (2d Cir. 1991).

In Nunez v. Horn, 72 F. Supp. 2d 24 (N.D.N.Y. 1999), the district court considered

14

whether a private physician was a state actor for the purposes of a § 1983 civil rights action.  The Nunez Court concluded that because the physician had treated the prisoner outside of the prison facility, and because the physician did not have a contract with the state to treat prisoners, but rather, treated them on a referral basis, the physician was not a state actor for the purposes of a § 1983 civil rights action.

Similarly in the present case, there is no indication that the Defendant Ira Davenport Memorial Hospital was part of the state prison facility, or that the hospital had contracted with the state to treat prisoners.  This Court therefore finds that the hospital is not a state actor for the purposes of a § 1983 civil rights  action.  See Nunez, 72 F.Supp.2d 24.

Furthermore, this Court finds that Plaintiff's claim against the Defendant hospital must also fail because Plaintiff has failed to "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Hernandez v. Keane, 341 F.3d 137, 147 (2d Cir. 2003) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).  Plaintiff has alleged merely that hospital employees failed to diagnose a fracture of his ankle; this is at most ordinary negligence, and not deliberate indifference.  Hernandez, 341 F.3d at 144 ("A showing of medical malpractice is therefore insufficient to support an Eighth Amendment claim unless the malpractice involves culpable recklessness").

For the foregoing reasons, Ira Davenport Memorial Hospital's motion for summary judgment (Docket No. 192) is granted.

Lastly, to the extent that Plaintiff asserts state law claims against the Defendant hospital, this Court will decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98

L.Ed.2d 720 (1988) (instructing that courts should ordinarily decline to exercise supplemental jurisdiction in the absence of federal claims).

**E.      Motion for Summary Judgment by the Steuben County Defendants**

**1.      Steuben County and the Steuben County Jail**

Defendants Steuben County and the Steuben County Jail have moved for summary judgement against Plaintiff, and argue that Plaintiff has failed to allege a deprivation of civil rights that was caused by a custom or policy of the county or the jail.  (Defendants' Mem., Docket No. 201-4, p. 3)  Plaintiff responds that the municipal defendants are liable based on a showing of county employees' deliberate indifference to Plaintiff's medical needs. (Plaintiff's Mem., Docket No. 216, pp. 6-7).  The Second Circuit has explained that "[m]unicipalities may only be held liable under § 1983 for the acts of their employees if the deprivation results from a policy or custom of the municipality."  Zapata v. City of New York, ___ F.3d___, No. 06-1059, 2007 WL 2742612, at *1 n.2 (2d Cir. September 20, 2007); see also  Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  Here, Plaintiff has failed to allege a policy or custom of the municipal defendants that resulted in the deprivation of his civil rights.  Accordingly, this Court will grant the summary judgment motion as to Steuben County and the Steuben County Jail.

To the extent that Plaintiff asserts state law claims against Steuben County and the Steuben County Jail, this Court will decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (instructing that courts should ordinarily decline to exercise supplemental jurisdiction in the absence of federal claims).

2.      **Defendant Gerald McUmber**

Defendant Gerald McUmber, a Steuben County Corrections Officer, has moved for summary judgment arguing that there is no indication he was deliberately indifferent to Plaintiff's serious medical needs.   (Defendants' Mem., Docket No. 201-4, pp. 4-5). Plaintiff's claim against Defendant McUmber concerns the incident at Ira Davenport Memorial Hospital where Plaintiff was injured when he fell out of the jail transport vehicle. Plaintiff alleges that Defendant McUumber directed Plaintiff to walk from the transport van to the hospital blood lab despite his injury.  Plaintiff concedes that when McUmber noticed Plaintiff was bleeding back at the jail, McUmber took him to see the jail nurse, who sent Plaintiff back to the hospital.  (Amended Complaint, Docket No. 95, ¶ 67).

Defendants contend that there is no genuine issue of fact as to whether McUmber was deliberately indifferent to a serious medical need.  "An official acts with the requisite deliberate indifference when he 'knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Brown v. Picarelli, No. 96 Civ. 1222, 2003 WL 1906180, at *6 (S.D.N.Y. Apr. 15, 2003) (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)).  Because there is no indication that Defendant McUmber was aware of Plaintiff's ankle injury, or that he disregarded an excessive risk to Plaintiff's health and safety, this Court finds that Defendant McUmber is entitled to summary judgment.

To the extent that Plaintiff asserts state law claims against Defendant McUmber, this Court will decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720

(1988) (instructing that courts should ordinarily decline to exercise supplemental jurisdiction in the absence of federal claims).

### 3.     Defendant Chris Lian, Steuben County Jail Superintendent

Defendant Chris Lian, Superintendent of the Steuben County Jail, moves for summary judgement on the same grounds as Steuben County and the Steuben County Jail, specifically that Plaintiff has failed to allege or demonstrate a policy or custom that caused a deprivation of his civil rights. (Defendants' Mem., Docket No. 201-4, p. 3). A review of Plaintiff's complaint, however, shows that Plaintiff is not suing Defendant Lian merely under a *respondeat superior* theory, but also as an individual who was personally involved in the alleged civil rights deprivation.

Plaintiff alleges that after a series of instances where Steuben County Jail employees did not address his medical needs, he complained in a letter to Defendant Lian, and that Lian arranged for Plaintiff to meet with Captain Keith Barrett. (Amended Complaint, Docket No. 95, ¶¶ 62-64). Plaintiff contends that Lian failed to adequately address Plaintiff's medical needs, and thereby exhibited a deliberate indifference. (Amended Complaint, Docket No. 95, ¶¶ 62-64).

A plaintiff asserting a § 1983 claim against a supervisory official in his or her *individual* capacity must demonstrate that the supervisor was personally involved. A plaintiff may demonstrate personal involvement by showing that the supervisor (1) failed to remedy the violation after being informed of it through a report or appeal, or (2) exhibited deliberate indifference to others' rights by failing to act on information indicating that unconstitutional acts were occurring. Saxon v. Attica Med. Dep't, No. 05-CV-6336, 2007

WL 30012, at *1 (W.D.N.Y. Jan. 5, 2007) (citing <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995) and <u>Williams v. Smith</u>, 781 F.2d 319, 323-24 (2d Cir. 1986)).

Here, Plaintiff has alleged that Defendant Lian was personally involved in the alleged civil rights deprivation.  Defendant Lian has failed to rebut this assertion in his motion for summary judgment, and instead focuses on the argument that Plaintiff has failed to allege a policy or custom that caused a deprivation of his civil rights.  Because there is a genuine question of fact as to Defendant Lian's involvement in the alleged deprivation, and as to whether Defendant Lian exhibited a deliberate indifference to Plaintiff's serious medical needs, Defendants' Motion for Summary Judgment must be denied as to Defendant Chris Lian.

### 4. Defendant Keith Barrett

Plaintiff alleges that as a result of his letter to Defendant Lian, Lian arranged for Plaintiff to meet with Captain Keith Barrett to address complaints related to Plaintiff's medical care, and that Captain Barrett caused Plaintiff extreme pain by refusing to provide medications and surgery, and ignoring Plaintiff's medical needs.  (Amended Complaint, Docket No. 95, ¶¶ 62-64).  Defendants' Memorandum does not address this allegation, but rather, focuses on the involvement of Captain Barrett in transporting Plaintiff to an eye care clinic in 2001.  (Defendants' Mem., Docket No. 201-4, pp. 3-4).  Defendants' motion for summary judgment must therefore be denied as to Defendant Barrett, because there is a question of fact as to Defendant Barrett's involvement in the alleged deprivation.

### 5. Defendant Kirk Sager

Plaintiff alleges that Captain Barrett informed him that Lieutenant Kirk Sager and

Nurse Jeanna Berry would determine whether Plaintiff would receive further medical care. (Amended Complaint, Docket No. 95, ¶¶ 62).  Plaintiff further alleges that he spoke with Lieutenant Sager, who informed Plaintiff that Sager and Nurse Berry had decided Plaintiff would receive no further medical treatment.  (Amended Complaint, Docket No. 95, ¶¶ 62). Plaintiff alleges that Defendants Sager and Berry refused to provide Plaintiff with the needed medical care for a three-month period, until September 26, 2000, when Plaintiff was injured in a fall out of a jail transport vehicle.  (Amended Complaint, Docket No. 95, ¶¶ 64; Plaintiff's Mem., Docket 216, p.8).

Defendants assert that Lieutenant Sager had no authority to influence decisions regarding Plaintiff's medical care.  (Defendants' Mem., Docket No. 201-4, p. 4).  Viewing the record on summary judgment in the light most favorable to Plaintiff, this Court finds that there is a genuine question of material fact as to Lieutenant Sager's involvement in the alleged deprivation.  This Court must therefore deny Defendants' Motion for Summary Judgment as to Lieutenant Kirk Sager.

### 6.    Defendants Jeanna Berry and Karen Mead

Defendants contend that the allegations against Nurse Jeanna Berry and Physician Karen Mead do not establish a deliberate indifference to a serious medical need. (Defendants' Mem., Docket No. 201-4, pp. 5-6).  Defendants argue that Plaintiff "provides no evidentiary basis" for his contentions that Defendants deprived him of medications, or that he required facial reconstructive surgery.  (Defendants' Mem., Docket No. 201-4, pp. 5-6).

Plaintiff attached to his complaint the reports of Dr. Howard Dash, a Plastic and Reconstructive Surgeon from the Robert Packer Hospital, where Defendant was initially

treated in the days after his arrest.  On May 14, 2000, Dr. Dash examined Plaintiff and concluded that he had suffered "facial fractures." (Complaint, Exhibit A-6).  Dr. Dash recommended a surgical procedure, and wrote that if Plaintiff remained at Robert Packer Hospital he would schedule surgery.  (Complaint, Exhibit A-6).  The next day, May 15, 2000, Plaintiff was released from Robert Packer Hospital.  The discharge papers listed various pain medications, indicated that Plaintiff had suffered facial bone fractures, and scheduled Plaintiff for a follow-up appointment with Dr. Dash on "Wednesday," which presumably referred to Wednesday, May 17, 2000.  (Complaint, Exhibits A-12, A-13). Plaintiff next saw Dr. Dash approximately three weeks later on June 5, 2000, at which time he recommended an "open reduction and internal fixation of his zygoma and zygomatic arch." (Complaint, Exhibit C-4).  Dr. Dash indicated that he had written a note to the jail physician giving his recommendation, and that he would discuss with the jail physician whether this surgery would be done in Pennsylvania, or by another doctor in New York. (Complaint, Exhibit C-4).

On June 2, 2000, Plaintiff saw Dr. Mohammad Mirza at the Ida Davenport Memorial Hospital.  Dr. Mirza diagnosed Plaintiff with "Facial pains secondary to multiple fractures to face bones," and indicated that Plaintiff should follow-up with a "maxillary surgeon for face." (Complaint, Exhibits C-2, C-3).

Plaintiff contends in his statement of facts that he was denied the necessary facial surgery and pain medications for the entire 14 months that he was housed at the Steuben County Jail.  (Plaintiff's Statement of Facts, Docket No. 217, pp. 4-5).  Defendants do not challenge Plaintiff's assertion that he was denied the facial surgery, nor do they offer evidence to controvert the treating physicians recommendations.  (Defendants Statement

of Facts, Docket No. 201-4, pp. 2-4).  Defendants argue, rather, that the medical records do not "establish that Plaintiff was in extreme pain or that he was otherwise mandated to have the facial reconstruction surgery."  (Defendants' Mem., Docket No. 201-4, pp. 5-6).

Plaintiff has submitted three reports by two different doctors, each diagnosing facial fractures and recommending facial reconstructive surgery, or in the case of Dr. Mizra, followup with a facial reconstructive surgeon.  (Complaint, Exhibits C2, C3, C4, A6, A12, A13).  Defendants have produced no evidence that rebuts the diagnoses or treatment recommendations of Dr. Dash and Dr. Mizra, nor have they shown that the jail staff undertook efforts to address Plaintiff's need for facial surgery.

This Court therefore finds that there is a genuine question of fact as to whether Defendants acted with deliberate indifference to Plaintiff's medical needs in failing to arrange for treatment of his facial fractures.  See Johnson v. Wright, 412 F.3d 398 (2d Cir. 2005) (denying Defendants motion for summary judgment where jail officials denied a prisoner a specific treatment despite the unanimous recommendation of multiple treating physicians); Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987) ("Prison officials are more than merely negligent if they deliberately defy the express instructions of a prisoner's doctors.").  This Court will therefore deny Defendants' Motion for Summary Judgment as to  Berry and Mead, finding that there is a genuine question of fact as to whether Defendants were deliberately indifferent to plaintiff's need for treatment of his facial fractures.

### 7.    Qualified Immunity

Defendants lastly move for summary judgment on the ground of qualified immunity. (Defendants' Mem., pp. 6-7).  "Qualified immunity shields government officials performing

22

discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Zellner v. Summerlin</u>, 494 F.3d 344, 367 (2d Cir. 2007), quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  Analysis of a qualified immunity defense involves a two-step process: "'we [first] address the threshold question of whether the amended complaint alleges the deprivation of an actual constitutional right. If it does, we then decide whether the right was clearly established at the time of the officers' alleged misdeeds.'" <u>Holcomb v. Lykens</u>, 337 F.3d 217, 220 (2d Cir. 2003), quoting <u>Patel v. Searles</u>, 305 F.3d 130, 135 (2d Cir. 2002).  The Second Circuit has explained that to defeat a qualified immunity defense, a Plaintiff "must allege a deprivation of an actual constitutional right clearly established at the time of the events in issue." <u>Id.</u>

Defendants assert that they are entitled to summary judgment based on qualified immunity, because Plaintiff has failed to allege that they deprived him of a clearly established constitutional right.  (Defendants Mem., Docket 201-4, pp. 6-7).  Given this Court's finding that there is a genuine question of fact as to whether the remaining Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment, Defendants' Motion for Summary Judgment on the ground of qualified immunity is denied.

**F.     Plaintiff's Motion to Preclude Summary Judgment**

Plaintiff contends in his Motion to Preclude Summary Judgment (Docket No. 206) that the Motion for Summary Judgment filed by the Steuben County Defendants (Docket No. 201) was delivered to him two days past the applicable deadline, and did not contain an affidavit of service of memorandum of law as required by this Court's Local Rules of

23

Civil Procedure.  (Plaintiff's Affirmation, Docket No. 206, pp. 1-3).  The Steuben County Defendants respond that upon receiving Plaintiff's motion, they provided Plaintiff with a memorandum of law, and that standard office procedures were followed in distributing copies of their moving papers.  (Defendants' Affidavit in Response, Docket No. 215, pp. 2-3).

This Court has reviewed the record and in particular Plaintiff's submissions in response to the Steuben County Defendants' Motion for Summary Judgment.  This Court finds, as evidenced by this Court's rulings on the Steuben County Defendants' Motion for Summary Judgment, that Plaintiff was able to prepare an effective response, and that there is no indication Plaintiff was prejudiced by the any delay in receiving Defendants' motion or supporting papers.  This Court will therefore deny Plaintiff's Motion to Preclude Summary Judgment.

### G.    Plaintiff's Motion Pursuant to Federal Rule of Civil Procedure 54(b)

On March 10, 2005, this Court issued a Decision and Order granting the motions to dismiss of certain Pennsylvania Defendants for lack of personal jurisdiction.  (Docket No. 163).  Plaintiff now requests that this Court enter a final judgment as to those Pennsylvania Defendants, so that he may file an immediate appeal.  (Docket No. 232).  The Defendants Robert Packer Hospital, Dr. Homan, Dr. Gillot, and Priscilla Bradley do not oppose Plaintiff's motion.  (Docket No. 236).  Defendants Bradford County, Dale Brown, Mark DeLauro, Sergeant Daniel Reynolds, Chief Kevin Guinane, and Dr. James Noone oppose Plaintiff's request.  (Docket Nos. 237, 238, 239).

Federal Rule of Civil Procedure 54(b) provides, in relevant part, as follows:

When more than one claim for relief is presented in an action,

24

> whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Rule 54(b) "provides an exception to the general principle that a final judgment is proper only after all claims have been adjudicated." Harriscom Svenska AB v. Harris Corp., 947 F.2d 627, 629 (2d Cir. 1991). The decision as to whether to enter a final judgment under Rule 54(b) is "committed to the discretion of the district court." Id. However, the Second Circuit has cautioned that a district court's power under Rule 54(b) should be exercised "sparingly," Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 16 (2d Cir. 1997) (citation omitted).

In order to grant a motion under Rule 54(b) "(1) multiple *claims* or multiple *parties* must be present, (2) at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make 'an express determination that there is no just reason for delay' and expressly direct the clerk to enter judgment." Info. Res., Inc. v. Dun and Bradstreet, Corp., A.C., 294 F.3d 447, 451 (2d Cir. 2002) (quoting Ginett v. Computer Task Group, Inc., 962 F.2d 1085, 1092 (2d Cir. 1992)).

Having reviewed the parties' submissions and the applicable law, this Court finds that the interests of sound judicial administration and the balance of the equities involved both weigh in favor of denying Plaintiff's request for an entry of final judgment. Ginett v. Computer Task Group, Inc., 962 F.2d 1085, 1093 (2d Cir. 1992) (noting that "federal policy generally disfavors 'piecemeal' appellate litigation"). This Court will therefore deny

Plaintiff's Motion for Entry of Final Judgment under Rule 54(b).

## IV.  CONCLUSION

For the foregoing reasons Ira Davenport Memorial Hospital's Motion for Summary Judgment (Docket No. 192)  is granted.  The Summary Judgment Motion of Defendants Curt Eaton, Cheng Yin, John A. Gibson, and John Grimmke (Docket No. 193) is granted in part and denied in part.  Specifically, the motion is granted as to Defendants Curt Eaton, Cheng Yin, and John Grimmke; and denied as to Defendant John A. Gibson.  The Steuben County Defendants' Summary Judgment Motion (Docket No. 201) is granted in part and denied in part.  Specifically, the motion is granted as to Defendants Steuben County, the Steuben County Jail, and Gerald McUmber; and denied as to Defendants Chris Lian, Keith Barrett, Kirk Sager, Jeanna Berry, and Karen Mead.   Plaintiff's Motion to Preclude Summary Judgment (Docket No. 206) is denied.  Plaintiff's Motion for a Determination under Rule 54(b) (Docket No. 232) is denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Ira Davenport Memorial Hospital's Motion for Summary Judgment (Docket No. 192) is GRANTED.

FURTHER, that the Summary Judgment Motion of Defendants Curt Eaton, Cheng Yin, John A. Gibson, and John Grimmke (Docket No. 193) is GRANTED in part and DENIED in part, consistent with the foregoing decision.

FURTHER, that the Summary Judgment Motion of Defendants Steuben County, the

Steuben County Jail, Jeanna Berry, Gerald McComber, Karen Mead, Kirk Sager, Chris Lian, and Keith Barrett is GRANTED in part and DENIED in part, consistent with the foregoing decision.

FURTHER, that Plaintiff's Motion to Preclude Summary Judgment (Docket No. 206) is DENIED.

FURTHER, that Plaintiff's Motion for a Determination under Rule 54(b) (Docket No. 232) is DENIED.

FURTHER, this Court will set an upcoming status conference date, by order to discuss the remaining claims which will be enumerated therein and referral to mediation.


SO ORDERED.

Dated:        September 27, 2007
              Buffalo, New York


                                        /s/William M. Skretny
                                     WILLIAM M.  SKRETNY
                                    United States District Judge